**Bertha FRANKEL, Plaintiff,**

v.

**Sylvia F. KURTZ, Defendant.**

**Civ. A. No. 4611.**

United States District Court
W. D. South Carolina,
Rock Hill Division.

March 25, 1965.

Vernon E. Sumwalt, and B. D. Hayes, Rock Hill, S. C., for plaintiff.

C. W. F. Spencer, Jr., Rock Hill, S. C., for defendant.

HEMPHILL, District Judge.

Defendant's Motion for Summary Judgment under Rule 56, Fed.Rules of Civ.Proc., initiated January 7, 1965, attacking, as part of the basis therefor, plaintiff's complaint, and plaintiff's following motion to amend under Rule 15 (a), induce present consideration in this forum.

Significant allegations of the original complaint read:

"That prior to August 25, 1963, plaintiff was invited by her daughter, the defendant, to visit in her home for the purpose of attending social events leading up to the marriage of plaintiff's grandson, who is defendant's son, on September 1, 1963; that pursuant to said invi-

tation, plaintiff came to defendant's home in Rock Hill, South Carolina approximately the middle of August, 1963; that at said time plaintiff was seventy-three years of age and lived with her daughter, Ruth Frankel, for whom she cooked and did general housework; that, as plaintiff is informed and believes, the defendant is the owner of a certain residence and lot located at 749 Milton Avenue in the City of Rock Hill; that, unknown to plaintiff until after the accident hereinafter referred to, the defendant had employed a yard man to care for the yard and had instructed him or permitted him to cut ditches along the edges of a winding, narrow cement walkway leading from the sidewalk to the defendant's residence; that grass was allowed to grow so that it covered these ditches directly adjacent to the walkway and so that it obstructed and hid the ditches from the view of persons using said walkway.

"That, as plaintiff is further informed and believes, prior to August 25, 1963, the defendant had on at least one occasion almost injured herself by stepping into a ditch immediately adjacent to the subject walkway and that, on another occasion, a neighbor had almost injured himself by stepping into a ditch adjacent to said walkway, all of which was known to said defendant, who had been warned that someone was going to be hurt unless the situation was corrected; that, as aforesaid, plaintiff had no knowledge of the existence of the hidden danger upon the premises and the defendant herein, even after warning, failed, neglected or refused to notify or warn plaintiff of the existence of said hazard.

"That on the evening of August 25, 1963 at approximately 6:45 or 7:00 P.M., plaintiff, being an elderly person with poor eyesight, was going for a walk with her daughter, Ruth, and was proceeding along the narrow walkway from the residence to the sidewalk running parallel to the street and was following behind her daughter; that, as aforesaid, said walkway was winding and plaintiff, being totally unaware that the level of the yard was not even with that of the sidewalk immediately adjacent thereto, was walking along said walkway when, as the walkway curved to the right, her left foot went into the ditch on the left side of said walkway in the direction in which she was walking thereby causing her ankle to turn as a result of which she was caused to fall violently to the ground primarily on her left arm and shoulder; that plaintiff suffered immediate and excruciating pain as a result thereof; that plaintiff is informed and believes that she suffered a severe injury to her left arm and shoulder, for which she was hospitalized; that a pre-existing hypertensive condition was aggravated as a result of said injury; that she has a serious and permanent disability of the left arm and shoulder which will prohibit her from performing her normal and usual household duties and even from completely dressing herself; that she has suffered extreme and excruciating pain since the date of said injury which, even though same has lessened during the past eight months, will remain with her through the balance of her life.

"That the injuries and damages sustained by the plaintiff were directly due to and proximately caused by the negligence of the defendant herein in failing to warn plaintiff of a dangerous, latent condition upon her premises, the existence of which she knew and had been warned about and which was unknown to plaintiff and which she could not reasonably ascertain and, further, that the defendant knew, or should have known, that because of plaintiff's age and poor eyesight that such condition

would be especially hazardous or dangerous to plaintiff to a much greater degree than it would to the average person."

In its general denial as part answer defendant *inter alia* avers:

"2. * * * [A]dmits * * * except as to whether defendant's employment of a yard man was unknown to plaintiff and as to existence of any hidden ditches along the walkway.

"3. * * * [D]enies that defendant was knowingly conscious of any hidden danger capable of injuring her mother, the plaintiff herein, without warning her of such danger."

■ Defendant's motion lies whenever, and only whenever, there is no genuine issue as to any material fact.[1] In this dispute the bare allegation of the pleadings come under the spotlight of judicial search.

■ This Court is of the opinion issues of fact are joined by the pleadings. Plaintiff alleges unknown and unwarned ditches along a walkway, obscured and latently dangerous, of which defendant had previous experience and knowledge, and that notification to plaintiff was not forthcoming despite defendant's knowledge of the "existence of the hazard." Defendant denies the danger, denies knowledge or "negligence on her part." At this point, a decision is a necessary projection.

But, defendant argues, plaintiff alleges that the acts and delicts alleged constitute at most simple negligence, upon which recovery cannot be based. Plaintiff's motion seeks to salvage by amendment to characterize the delicts as "gross negligence, heedlessness and recklessness" instead of simple negligence.

■ Admittedly plaintiff did not move to amend within twenty days of the filing of his complaint on April 20, 1964, nor enjoys, at this sitting, previous leave of the Court or written consent of the adverse party. Plaintiff must hang her hat, so to speak, on the statutory largess that "leave [to amend] shall be freely given, when justice so requires."[2] The reason for the inclusion of this liberality has been repeatedly construed as being in the interest of avoiding technicality and facilitating a proper decision on the merits.[3] As is declared in Foman v. Davis, 371 U.S. 178, 179, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222:

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—

1. Wright on Federal Courts, 1963 Ed. p. 385, Chap. 10, Sec. 99. This reads in part as follows: "Rule 56 permits any party to a civil action to move for a summary judgment upon a claim, counterclaim, or cross claim as to which there is no genuine issue of material fact and upon which the moving party is to prevail as a matter of law. The motion may be made as to all or a part of a claim of defense. It may be made on pleadings or the record or it may be supported by affidavits. The motion strikes at the heart of the claim. In effect it argues that as a matter of law upon admitted or established facts the moving party is entitled to prevail."

2. Rule 15(a) provides: "*Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

3. See McHenry v. Ford Motor Co., 6 Cir., 269 F.2d 18; United States v. Koike, 9 Cir., 164 F.2d 155; Cooper v. American Emp. Ins. Co., 6 Cir., 296 F.2d 303.

the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity, to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of [the] Federal Rules."

While this court dislikes the term "mandate" as classified in the annotations under 28 U.S.C.A. Rules 15,[4] the definition of duty, policy, responsibility, rings clear.

But, we now enquire, if plaintiff can amend, proceed, what is the law of the case?

Plaintiff and defendant join in designating, and/or classifying, the plaintiff as a "social guest", a term, or a category, not hitherto treated as such, or by such name, in South Carolina common law, or by statute. This Court, then, is saddled with the question of whether the classification connotes a definition of variety and distinction all its own. This Court thinks not.

 A social guest is a licensee. "A licensee is a person who is privileged to enter upon land by virtue of the possessor's consent. The possessor is under no obligation to exercise care to make the premises safe for his reception, and is under no duty toward him except:

(a) To use reasonable care to discover him and avoid injury to him in carrying on activities upon the land.

(b) To use reasonable care to warn him of any concealed dangerous conditions or activities which are known to the possessor, or of any change in the condition of the premises which may be dangerous to him, and which he may reasonably be expected to discover.[5]

In the instant case plaintiff was a gratuitous licensee. If a danger is not hidden from her, is patent, and an ordinary woman of reason and prudence would reasonably and normally be expected to see and avoid same, defendant possessor owes no duty to warn. If a danger is present, hidden, latent, and defendant possessor (owner) knows, and fails to warn, or not knowing, fails to warn because of lack of ordinary reason and prudence to discover, and plaintiff is injured, plaintiff can recover.

 A "social guest" is the same as a "social visitor", "guest" or "licensee". With or without invitation to visit, the duty of the host is to refrain from wilful and wanton injury. Knox v. Goodman, 45 N.J.Super. 428, 133 A.2d 50. See also Cunag v. McCarthy, 42 Ill.App. 2d 36, 191 N.E.2d 404, 407; Drutman v. Agar, 17 Misc.2d 291, 185 N.Y.S.2d 142, 144.

 This Court determines, from a review of authorities that the requirement of knowledge (or the requirement of discovery in order that knowledge can be realized by the application of ordinary reason and prudence under the circumstances) of the defect or danger supposes liability based upon a greater degree of negligence than ordinary or simple negligence as contemplated and defined by South Carolina Courts. It therefore appears that there is no duty on the possessor or owner unless knowledge is present in him or reasonably available to him.

Hill v. Broad River Power Co., 151 S.C. 280, 148 S.E. 870, 871, arises from a state of facts in which plaintiff was killed while employed on the property of defendant; a tree fell on him and negligence was alleged as the proximate cause of the fall. The Court said:

"Since one cannot recover damages of another unless the second has failed to discharge a duty which he owed to the first, and since in this case the plaintiff alleges that the defendant cut the tree, and left it standing as above described, the

---

4. 1964 Annual Cumulative Supplement p. 55.

5. Prosser on Torts, 2nd Ed. p. 445 Licensees § 77.

inquiry is: Did the defendant owe the plaintiff's intestate the duty not to so cut and leave the tree? The duty which one owes to another under such circumstances is declared in verses 33–34 of the Twenty-First chapter of Exodus, as follows:

" '33 And if a man shall open a pit, or if a man shall dig a pit, and not cover it, and an ox or an ass fall therein;'

" '34 The owner of the pit shall make it good, and give money unto the owner of them; and the dead beast shall be his.'

"It is a long cry from Moses to the present day, but there has been little change in the law in the meantime, as shown in the case of Bradford v. Woolworth Co., 141 S.C. 453, 140 S.E. 105, where, quoting from 20 R.C.L. 55, 56, it was said:

" 'The authorities are entirely agreed upon the proposition that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go thereon or therein owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils. In the language of a recent opinion: "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them." If there are hidden dangers upon the premises he must use ordinary care to give warning thereof. While the rule has been applied in innumerable situations, it has been invoked most frequently, perhaps, in the case of injuries from unguarded excavations, unprotected stairways, hatchways, trapdoors, turnstiles, revolving or swinging doors, and collapsing buildings. The facts of the particular case are, of course, controlling upon the question of negligence, and the decision thereon is properly within the sphere of the jury.' 20 R.C.L. 55, 56."

The draftsman of the Hill complaint was careful to allege the greater degree of negligence, to wit: "Carelessness, wilfulness, wantonness."

■■■ "Gross negligence * * * (is) the want of even slight care and diligence. It is a greater want of care than is to be understood by the term 'ordinary care.' " Thackston v. Port Royal & W.C.Ry. Co., 40 S.C. 80, 18 S.E. 177.

Federal Courts reason similarly.

LaPlace v. Abelman, 186 F.Supp. 339 (D.C.Del.1960) is apposite. There Mr. and Mrs. Abelman had invited Mr. and Mrs. LaPlace to their home for a social visit. While there Mrs. LaPlace fell on a small rug while going from the living room into the hall, thereby injuring herself. She brought suit alleging that the defendants had negligently permitted the living room floor and small rug thereon to become and remain in a dangerous and unsafe condition, a condition which had existed long prior to her injuries to the knowledge of the defendants. The evidence indicated that the floors had been waxed prior to the accident. The rug which caused the fall was equipped with a rubber undercoating to prevent slipping, but it had become smooth. Prior to the plaintiff's fall, the defendants had seen their grandson fall on the same rug. The Court ruled that the applicable Delaware law as laid down in Maher v. Voss, Del.Super., 7 Terry 418, 84 A.2d 527 (1951), was that:

" * * * No liability rests upon a possessor of land, even to a business visitor, for bodily injury caused by a dangerous condition on the land, if the visitor knows of the condition and realizes the risk involved. But the possessor is subject to liability to gratuitous licensees if, and only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to the licensee and has reason to be-

lieve that they will not discover the condition or realize the risk, and (b) invites or permits the guests to enter or remain upon the land without exercising reasonable care to make the condition reasonably safe or to warn them of the condition and the risk involved therein. The owner is not obliged to prepare a safe place for the licensee's use, but his duty is satisfied if he discloses the known condition of peril to the guest. * * *."

The Court then reasoned that in addition to the factors of a throw rug on a highly polished floor there was also the factors of (1) the rubber on the underside of the rug being worn, (2) wax had collected on the underside of the rug, and (3) the defendants had seen their grandson fall on the same rug previously. These facts, said the Court, justified denying the defendants' motion for summary judgment.

The rule is stated a little more succinctly in 38 Am.Jur., Negligence § 117, as:

* * * [T]he rule is that a host who knows of a concealed danger upon the premises is guilty of negligence if he permits the guest, unwarned of the peril, to come in contact therewith, and he may be held liable to the guest for an injury thus sustained.

This was cited with approval in Smith v. Allen, 297 F.2d 235, 243 (4th Cir. 1961).

A slightly different approach was set forth in Gleason v. Academy of the Holy Cross, 83 U.S.App.D.C. 253, 168 F.2d 561 (1948). In that case the plaintiffs were husband and wife, suing for the wife's injuries. Their daughter was a nun, who, with the defendant's permission, had invited her parents to be house guests in the defendant institution. The wife suffered injuries when she fell off a step at the back of the balcony of the school chapel. The plaintiff fell because she had not seen a step. The Superior

knew that to one entering the balcony when artificial lights were not in use an illusion was created in that the second step down appeared to be the first. A Sister in the defendant institution had previously fallen as had the plaintiff, and for the same reason. There was evidence not only of the illusion but also of facts that tended to explain it. The plaintiff had been given a room directly across the corridor from the door into the passageway leading to the balcony. The daughter had twice led her parents through the door and stayed with them in the passageway during Mass. However, when the plaintiff fell she was there alone in order to get near a group of singing nuns. She had not been warned of the illusion or the danger it created. The Court found for the plaintiffs, thus reversing an order under Rule 50(b) setting aside a verdict in her favor. The Court in its opinion said that it was unimportant to them whether the plaintiff was a social rather than a business guest of the defendant, or more technically, "a gratuitous licensee rather than an invitee." Because, as the Court said, dangers that careful people are not likely to discover are latent, and the step in question was such a latent danger. The important thing was that the defendant knew of the danger and had made no effort to warn the plaintiff of it. The Court there noted that "Occupiers of premises have long been liable, even to gratuitous licensees, for injuries that result from this sort of negligence."

Another line of cases requires a showing which the Courts have designated as gross negligence. One of the first in this line was the case of Comeau v. Comeau, 285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002 (1934). It was established in that case that the plaintiff had had an outstanding and implied invitation from the defendant to visit for social purposes. On this occasion while passing from the street to the defendant's house the plaintiff was injured by broken concrete in the passageway owned by the defendant. This condition had

existed for many years due to the defendant's negligence to keep it in a safe condition for such use. The Court held for the defendant on the ground that there was nothing shown except ordinary want of care in the maintenance of the passageway. The Court stated that its decision was governed by the Massachusetts rule that a guest riding gratuitously in the automobile of the defendant at his invitation could not recover for injuries caused by the negligence of the defendant unless gross negligence was established. The Court felt that it would be illogical for the gross negligence rule to be applied to one's guest in an automobile and the ordinary negligence rule to be applied to a social guest in one's home. However, the Court did point out that it was not shown that the condition of the concrete passageway involved an unreasonable risk, and was not readily discoverable and avoidable by one using the passageway with reasonable care. How the gross negligence rule would have been applied if the condition had been a latent one was, thus, not reached.

That particular point was, however, involved in the recent Fourth Circuit case of Smith v. Allen, 297 F.2d 235 (4th Cir. 1961), supra, which arose in the State of Virginia. In that case, Mrs. Smith, an active sixty year old woman, was visiting her nephew, the defendant Allen, as his social guest. Allen's home was situated on the bank of a body of water and he had a private pier extending out into the water. At the time of plaintiff's arrival she was told that the pier was being repaired. These repairs consisted of a renewal of the entire superstructure. One of the materials used was some used lumber which had been only casually inspected. Subsequently, Allen informed Mrs. Smith that the repairs had been completed and she afterwards walked out onto the pier intending to fish from the end of it. While proceeding along the pier, and looking where she was going, a piece of the used

lumber broke and her leg went down through the pier beyond her knee causing her to fall on her back. The board that broke was rotten and this was known or should have been known to Allen's employee, who repaired the pier. Allen gave Mrs. Smith no warning that the pier or any part of it was unsafe. The plaintiff suffered serious injuries causing her substantial expenses. Mrs. Smith brought suit using as a basis for Allen's liability his alleged negligence in maintenance of the pier. At the trial the defendant was granted his motion for a directed verdict, whereupon the plaintiff appealed.

The Fourth Circuit stated that there were no Virginia decisions establishing either the status of a social guest in the home of another, or the degree of duty owed by the host to his guest. The Court then proceeded to review all of the authorities on the matter. In the course of its review the Court cited several Virginia cases which involved invitees, but which contained some broad language to the effect that the duty of ordinary care is owed to a social guest. But the Court stated that such language was not enough to base a holding that a social guest stood on the same ground as an invitee. The Court, also, referred to the position taken by the Restatement of Torts, which apparently constitutes the majority position. However, the Court refused to follow that position, although it did accept the Restatement's position that such a social guest as Mrs. Smith is a gratuitous licensee.

The Restatement's position as outlined in § 342 is that:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not

discover the condition or realize the risk, and

\* \* \* \* \*

"(c) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein."

In the instant case, it is clear that the defendant knew that her mother, the plaintiff, was of advanced years and that the walkway in question was more hazardous for her to use. Note that paragraph (a), above, says "unreasonable risk to *them*," making reference to the licensee. Thus, the risk, in cases where there has been an alteration of the land which creates a hazard, must be looked at in terms of the individual licensee, particularly with the "permissiveness" and knowledge here involved. The relating of the particular hazard to the plaintiff, when there is knowledge or a duty in the exercise of reasonable care to know, is not new, e.g., the attractive nuisance and other doctrines relate especially to children. See Everett v. White, S.C., 140 S.E.2d 582. Why should adults, who, because of advanced years or other infirmities, and about whom the landowner has knowledge, along with knowledge of the hazard, be treated differently? Of course, this "knowledge", along with the corresponding duties, assuming injury, proximate cause, etc., would under all the circumstances amount to more than "simple negligence," but would amount to "gross negligence" as the term is defined above.

The reasoning of this Court has been guided and strengthened by the opinion of Senior District Judge C. C. Wyche in Craft v. U. S., 237 F.Supp. 717 (W.D.S.C.1965). The burden is on plaintiff to prove in defendant a greater degree of negligence than simple negligence.

Motion for summary judgment denied; plaintiff granted leave to amend.

And it is so ordered.