19631

Wilton W. SHERRILL, Jr., a minor by his Guardian Ad Litem Margaret S. Dixson, Respondent-Appellant, v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, and South Carolina Electric and Gas Company, Appellants-Respondents.

(197 S. E. (2d) 283)

*Messrs. Joseph R. Young,* of *Young, Clement & Rivers,* of Charleston, *John A. Boykin, Jr.,* and *William D. Goddard,* of Atlanta, Georgia, *for Appellant-Respondent,*

*Allen R. Dupree, Esq.,* of North Charleston, *for Respondent-Appellant,*

*Messrs. Joseph R. Young,* of *Young, Clement & Rivers,* Charleston, *John A. Boykin, Jr.,* and *William D. Goddard,* of Atlanta, Georgia, *for Appellant-Respondent, in Reply.*

June 6, 1973.

LITTLEJOHN, Justice.

In this case, the complaint alleged that on or about March 1, 1970, plaintiff Wilton W. Sherrill, Jr., an eighteen-year-old boy, incurred electrical shock and severe burns and injuries, resulting from negligence on the part of Southern Bell and/or South Carolina Electric and Gas Company, while engaged in roofing repairs on the roof of a building located at the corner of Spruill Avenue and Hampton Street in Charleston. The answer of both defendants alleged sole negligence and contributory negligence on the part of the plaintiff.

The trial judge granted a nonsuit in favor of South Carolina Electric and Gas Company. The jury returned a

verdict of $50,000.00 actual damages against Southern Bell, which has appealed. The single question submitted by Southern Bell, as copied from its brief, is as follows:

"The sole question raised by Southern Bell in this appeal is whether there is any direct or circumstantial evidence of actionable negligence attributable to Southern Bell."

Sherrill has also appealed, alleging error on the part of the trial judge in refusing to dismiss Southern Bell's appeal because it was untimely. In light of the ruling we hereinafter make, it becomes unnecessary to discuss Sherrill's exception. It is appropriate, however, to state that we think the exception without merit and hold that the appeal is timely. There is left for our consideration only the question raised by Southern Bell as set forth above.

On or about Saturday, Feb. 28, 1970 and Sunday, March 1, 1970, Sherrill was engaged in roofing repair work on the roof of the Palmetto Wrecking & Salvage Company building. A utility pole, owned by South Carolina Electric and Gas Company, was located immediately to the west of the building. Another utility pole, owned by South Carolina Electric and Gas Company, was located immediately to the east of the building.

A telephone line (owned by Southern Bell and consisting of an insulated transmission line, a non-insulated metallic support cable, and a non-insulated connecting mousing wire) extended between the utility poles. The telephone line was located across and approximately three feet above the roof of the building. The sole purpose of the support cable and mousing wire was to support the transmission line, which was used to carry line and voice current.

In addition to the telephone line, three South Carolina Electric and Gas uninsulated electric power transmission lines extended between the same two utility poles. The first electric power line, a neutral wire, was located approximately seven feet above the telephone line. The second and third electric power lines, both primary wires were

located approximately eleven feet and thirteen feet, respectively, above the telephone line. The neutral line did not carry electrical current, but the two primary lines carried about 8,000 volts. The telephone company used the poles jointly with the power company, including the use of common grounding devices on the poles.

On Saturday and Sunday, Sherrill had on several occasions come into contact with the support cable. No electric shock resulted from such contact. Immediately prior to the accident, Sherrill climbed from the ground to the roof, using an aluminum ladder. The eyewitnesses, testifying for the plaintiff, stated that Sherrill began to pull the ladder onto the roof and in the process backed into the telephone support cable, experiencing the shock and burn injuries for which damages are sought in this litigation. Plaintiff's witness Margaret S. Dixson, an eyewitness to the happening, testified that, after the accident, she noticed a "sparking" wire "dangling" from a South Carolina Electric and Gas Company transformer located on the utility pole to the east of the building. There was no evidence that Southern Bell caused the wire to dangle or spark, and there was no evidence that the wire had been either dangling or sparking prior to, or for any appreciable period of time prior to, the happening.

Plaintiff's witness Smith, a duly qualified expert electrician, investigated the scene within a few hours after the plaintiff was injured. He testified that he used a voltmeter and found 120 volts of electrical current on the support cable of Southern Bell. He testified that the current on the telephone support cable indicated an insufficient ground and that his visual inspection failed to disclose a defect in the grounding device and that he could not make an ohmmeter test because the ground wire was charged.

Electricians Smith and Roy A. Martin testified that Sherrill could not have been shocked by electrical current coming from the telephone support cable, since the roof was an insulator, unless the aluminum ladder in Sherrill's hand

was grounded or he was in some unknown way otherwise grounded.

In arguing that the trial judge should have granted a directed verdict and a motion for judgment notwithstanding the verdict, Southern Bell takes the position that the record is void of any direct or circumstantial evidence of actionable negligence attributable to it. An action sounding in negligence requires the plaintiff to show a duty on the part of the defendant, a breach of that duty by an act of omission or commission, and that such breach of duty was the proximate cause of plaintiff's injuries.

Our courts have established a high degree of care for the utility companies in maintaining wire lines. When utility companies maintain wire lines on or over private premises, they are required to use care commensurate with the danger to see that no injury comes to persons rightfully in proximity to them and who are guilty of no wrong. *Lancaster v. South Carolina Power Co.*, 181 S. C. 244, 186 S. E. 911 (1936); *Hill v. Carolina Power & Light Co.*, 204 S. C. 83, 28 S. E. (2d) 545 (1943); *Lundy v. Southern Bell Tel. & Tel. Co.*, 90 S. C. 25, 72 S. E. 558 (1911). The care required is more than mere mechanical skill; it includes foresight with regard to reasonably probable contingencies. *Elliot v. Black River Elec Co-op.*, 233 S. C. 233, 104 S. E. (2d) 357, 74 A. L. R. (2d) 907 (1958).

Our review of the transcript to determine if there is any evidence to support a finding of negligence on the part of Southern Bell is made difficult by the fact that the specifications of negligence are not included in the transcript of record. We gather, however, from respondent Sherill's brief, and from appellant Southern Bell's reply brief, that the complaint alleged that Southern Bell negligently failed to construct its lines over the building involved so as to prevent the lines from becoming latently dangerous when charged by electrical wires, and failed to insulate the support cable, and failed to raise the support cable to a sufficient height so as to

avoid contact with persons on the building, and failed to take precautions to avoid injury to, persons who might be on the roof for repair purposes and other purposes.

It is obvious that Southern Bell knew that there was a possibility, if not a probability, that its lines might become electrically energized. For this reason, it undertook to provide a ground. It was bound to take knowledge of the fact that it would become necessary from time to time to make repairs upon the roof and that persons would be on and about the roof for the purpose of keeping the same in good repair. Precautions should have been taken for those thus engaged. There is certainly evidence justifying the conclusion that the shock and burns came from the telephone company's lines rather than from the lines of South Carolina Electric and Gas Company as argued by the appellant. The danger was hidden. Obviously, the appellant knew or should have known of the dangerous proclivities, whereas there is no reason to believe that Sherrill, an eighteen-year-old roofer, had similar knowledge. Southern Bell was charged with the duty of constructing and maintaining its lines as far as practicable in a condition to avoid injuries to persons who might be lawfully on the roof. They inferably chose to use a grounding system in order to maintain the harmless nature of their lines.

There is evidence to the effect that Southern Bell's lines were grounded and, if such was true, the telephone lines would not have become energized. On the other hand, there is evidence which if believed warrants the conclusion that the grounding system was not operating properly and allowed the support wire to become charged.

Mr. Smith testified that he found 120 volts of electrical current on the support cable, and

"That indicated the guy wire, which is bonded to a common bond of the power company bond on the poles, was insufficient."

Later, Mr. Smith was specifically asked if he knew of his own knowledge:

"Q. How did it have charge?

"A. The ground was improper."

Mr. Richard I. Moore, a South Carolina Electric and Gas Co. lineman, testified that he arrived at the scene of the accident while the ambulance was still there. He explained that the grounds were intact when he checked them with his hands, but that he did not check them with any instrument. When asked if he could argue with a statement that the ground wires were not functioning, he answered: "Not scientifically, no." Mr. Moore also testified that if the lines were properly grounded there could be no power on the telephone company support cable. It is interesting to note that Mr. Moore did not check the telephone company support cable for voltage.

As discussed hereinabove, it would have been a reasonable inference for the jury to have found that the ground was proper and that the injury occurred when the ladder was lifted into the power lines of the electric company. It would also be reasonably inferable from the record that the plaintiff was injured by an inadvertently charged guy wire, such charge being caused by the improper installation or maintenance of the telephone company's grounding system.

Inasmuch as both inferences are reasonable, we cannot say as a matter of law that Southern Bell did not breach its duty to properly install and maintain the grounding system which it selected for the purpose of preventing injury to persons rightfully in proximity to their lines.

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, J. J. concur.