Wanda G. CHRISLEY, Administratrix of the Estate of Thomas Darren Chrisley, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 85–270–3.

United States District Court, D. South Carolina.

Sept. 23, 1985.

Griffeth, Mays, Foster & Kittrell, Pope & Hudgens, P.A., Newberry, S.C., for plaintiff.

Vinton D. Lide, U.S. Atty., Paul E. Wilburn, III, Asst. U.S. Atty., Greenville, S.C., for defendant.

## MEMORANDUM OPINION AND ORDER FOR SUMMARY JUDGMENT OF DISMISSAL

GEORGE ROSS ANDERSON, Jr., District Judge.

This is an action for the alleged wrongful death by drowning of the plaintiff's fifteen-year old son, Thomas Darren Chrisley, who fell from a rock outcropping into swiftly moving waters below the Richard B. Russell Dam. The defendant, United States of America, has moved for dismissal under F.R.Civ.P. 12(b)(1) and (6), or alternatively, for summary judgment under F.R.Civ.P. 56. For the following reasons, the court concludes that the defendant's Motion for Summary Judgment should be granted.

## FINDINGS OF FACT

After examining the record in this case, hearing counsel's arguments upon the motions, considering the exhibits attached to the Motion and to the Memorandum in Opposition, and after reviewing submitted depositions, certain facts are evident and undisputed by either party.

The Richard B. Russell Dam and Lake is a multipurpose water resource project constructed and maintained by the United States Army Corps of Engineers. It is located on the Savannah River (headwaters of Clarks Hill Lake) on the border between South Carolina and Georgia. A portion of the water resource project which was owned and controlled by the defendant included a riverbank area below the dam on the South Carolina side. The South Carolina riverbank below the dam was a steep, wooded slope with a rocky shoreline. This bank was a favorite spot for fishermen, and paths indicating frequent travel through the area extended from the top of the high bank to the shoreline. At the time of the drowning, June 17, 1983, the United States Army Corps of Engineers had restricted public access to a portion of the South Carolina riverbank extending for approximately two hundred (200) feet below the dam. The Corps also prohibited boats and boaters from entering the water area within one thousand (1,000) feet below the dam. A cable had been placed across the river one thousand (1,000) feet downstream from the dam to keep boaters proceeding upstream from coming any closer to the dam.

Thomas Darren Chrisley was a reasonably healthy fifteen-year old who experienced no significant physical or mental handicaps. On June 17, 1983, at approximately 4:30 p.m., he and his father entered the bank area on the South Carolina side of the dam and proceeded to a location approximately five hundred (500) feet below the dam to fish for striped bass. They paid no entrance fees or admission fees for entry into or use of the bank area for fishing. The area in which the Chrisleys entered and in which they fished had not been

restricted to fishermen or others who sought access to the river by way of the land. There were no signs or devices posted at the site which warned persons of the obviously steep and rocky riverbank and of the swiftly moving water current. Thomas Darren Chrisley and his father were familiar with the area below the dam. They had fished together there as recently as June 16, 1983, when they would have observed conditions similar to those which existed on June 17, 1983. Mr. Chrisley desired that his son stay out of the water and had warned him of hazardous conditions presented by the area.

On June 17, 1983, at approximately 8:00 p.m., Thomas Darren Chrisley, while aiding his father in landing a large fish, fell approximately six to ten feet from a rock on the South Carolina riverbank into the swiftly moving current. A Corps of Engineers' employee standing on the Georgia side of the river unsuccessfully attempted to gain the attention of the father, who at the time of the fall was downstream of his son, to let him know that the boy had fallen into the river. After resurfacing twice the boy disappeared under the water and apparently drowned. His body was recovered two days later approximately three hundred (300) feet below the point where he entered the water.

On the day of the drowning, the dam and powerhouse were still under construction, and the water which would accumulate on the face of the dam was being channeled through the dam by a series of five openings or sluice gates at the bottom of the dam. Passage of the water through the gates created a turbulent "whitewater" effect below the dam. Although the flow rate and turbulence of the water were altered from their natural condition by the passage through the sluice gates, this turbulent condition remained constant when the gates were open. All five sluice gates had been opened on June 14, 1983, and all five gates remained open from that date until the evening of June 17, 1983, when they were closed to assist in rescue opera-

tions for the Chrisley boy. The turbulence of the water would have been apparent to Thomas Darren Chrisley and his father when they came to the area on the afternoon of June 17, 1983, and it would not have been altered appreciably during their time at the area.

## I. The Discretionary Function Exception of 28 U.S.C. § 2680(a)

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, constitutes a limited waiver by the United States of sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). This waiver is limited in part by the discretionary function exception found in 28 U.S.C. § 2680(a) which provides that the Federal Tort Claims Act shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or a regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The exception "poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as a part of his overall burden to establish subject matter jurisdiction." *Shirey v. United States*, 582 F.Supp. 1251, 1259 (D.S.C.1984) (citing *Baird v. United States*, 653 F.2d 437, 440 (10th Cir.1981); *First National Bank in Albuquerque v. United States*, 552 F.2d 370, 376 (10th Cir.1977); and *Smith v. United States*, 546 F.2d 872, 877 (10th Cir. 1976)).

*Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (hereinafter *"Dalehite,"*) is the leading case on discretionary function exception, and its continuing validity was recently reaffirmed

by the Supreme Court in its decision in *Varig*[1]. The court in *Dalehite*, stated:

> [T]he 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out operations of government in accordance with official directions cannot be actionable. *Id.*, at 35–36, 73 S.Ct. at 967–68.

By 16 U.S.C. § 460, Congress assigned to the Department of the Army responsibility for the efficient management and operation of recreation facilities at water resource development projects. Under United States Army Corps of Engineer Regulation, ER 1130–2–400, responsibility for all aspects of the operations, maintenance, and administration of a water resource project, such as Richard B. Russell Dam and Lake, is delegated to the on site manager.[2]

The United States, in its Motion and Memorandum in Support thereof, asserts that the Resource Manager at Richard B. Russell Lake and Dam project exercised a discretionary function when, in his capacity as an employee of the government, he restricted or did not restrict access to portions of the South Carolina bank below the dam.

The plaintiff argues that by the inclusion of the term "operations" in the description of the Resource Manager's duties, the Resource Manager functioned upon an operational level as opposed to a planning level; and consequently, his acting or failing to act to restrict or to post warnings at the concerned area was not an exercise of a discretionary function. To support her argument, the plaintiff relies upon a line of cases which seek to interpret *Dalehite*, by classifying the actions of government employees as being either on an operational level or a planning level. The employee who performs functions on a planning level would be capable of invoking the discretionary function exception, but those who act on the operational level would not be able to utilize the exception. The plaintiff relies in part on two cases, *Epps v. United States*, 187 F.Supp. 584 (E.D.S.C.1960), and *Hardy v. United States*, 187 F.Supp. 756 (E.D.S.C.1960). Because these cases discuss an action by government employees which requires no actual decisional process (i.e., surveying of a dam), the Court finds these cases inapplicable to an analysis of the type of decisions and actions exercised by the Resource Manager at Russell Lake.

■ To determine whether or not an act is an act of discretion, the Court must consider the nature of the conduct of the employee which is in question. *Dalehite*, however, made it clear that *all* government employees exercising discretion are covered by the exception. *Supra*, 346 U.S. at 33, 73 S.Ct. at 966. As to which acts or conduct of the government employees are excepted, The court in *Varig*, explained:

> First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability. *Supra*, 104 S.Ct. at 2764.

1. *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

2. ER 1130–2–400 7.a. *Resource Managers.* Except for specifically designated facilities such as locks and powerhouses, the resource manager will be responsible for all aspects of operations, maintenance, and administration of a water resource development project and its natural and cultural resources. A resource manager will be assigned to a new project shortly after the initiation of land acquisition. In addition to coordinating the real estate element, the resource manager will be actively involved in coordination aspects of planning, design, construction, and other project activities.

The Resource Manager at Richard B. Russell Lake and Dam was charged with the responsibility of coordination of all aspects of planning, design, construction, and other project activities. He was to make an evaluation of how the public interest could best be served. In doing so he weighed the demands for access to fishery resources against the possible risk of harm to the public from allowing it access to a steep and rocky hillside adjacent to turbulent waters. By balancing various factors, he made a policy judgment regarding which areas to restrict or not restrict. He declined to restrict the bank from which Thomas Darren Chrisley fell into the water. His decision not to restrict the bank area was made in response to a public demand for access to a fishing area.

■ The discretion protected is the discretion of the executive or the administrator to act according to his judgment of the best course. *Shirey v. United States, supra,* at 1259. Clearly, the responsibility given to the Resource Manager to act upon his judgment as to what course would be best, would be an exercise of discretion, and whether he acted or failed to act or perform this exercise of discretion, the discretionary function would cause any claim based upon his action or failure to act to be exempt from the Federal Tort Claims Act. Therefore, the authority delegated to and utilized by the Resource Manager at the Richard B. Russell Dam which caused him to weigh often competing interests and to make a decision according to his best judgment would be a discretionary function which would not be subject to review by this court. *See Estate of Callas v. United States,* 682 F.2d 613 (7th Cir.1982); *Gemp v. United States,* 684 F.2d 404 (6th Cir. 1982); and *Gercey v. United States,* 540 F.2d 536 (1st Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977).

Furthermore, even if the plaintiff could show that the best interests of the public were not served by allowing access to the bank, and that the Resource Manager abused his discretion in not closing off an area of obvious hazards, the action or failure to act by the Resource Manager would still be an exercise of discretion and, consequently, could not be actionable.

If a government employee performing a discretionary function acts negligently, the exemption remains applicable even though the activity constitutes abuse of discretion. As the statute itself provides, discretionary functions are exempt whether or not the discretion involved be abused. 28 U.S.C. § 2680(a). *General Public Utilities Corp. v. United States,* 745 F.2d 239, 245 (3rd Cir.1984).

Plaintiff has, in addition to questioning the rationale of the defendant in not restricting the bank area, raised an issue regarding the defendant's duty to post warning signs or devices at the concerned site. Indeed, *Shirey v. United States, supra,* at 1261, (citing *Smith v. United States,* 546 F.2d 872 (10th Cir.1976),) may indicate that the act of restricting or not restricting an area may be considered separately from the decision not to issue or post warnings.

The defendant, United States, relying in part upon *Empire District Electric Co. v. Rupert,* 199 F.2d 941 (8th Cir.1952), *cert. denied,* 345 U.S. 909, 73 S.Ct. 649, 97 L.Ed. 1344 (1953); and *Gemp v. United States,* supra, contends, however, that the United States Corps of Engineers' Resource Manager performed an exercise of discretion in not restricting that portion of the bank from which Thomas Darren Chrisley fell, and no further duty was owed to Thomas Darren Chrisley because the hazards encountered were open and obvious. Additionally, the defendant would argue that, just as the Resource Manager acted according to what he deemed to be the best course in not restricting the concerned area, he also performed an act of discretion when he did not post signs and devices which warned persons who entered the bank area of the obvious hazards of that location. The government again points out that the Resource Manager considered various factors including feasibility of posting of warnings, and his not posting signs tell-

ing of the obvious hazards of the area was a discretionary function which would not be actionable under the Federal Tort Claims Act.

The plaintiff, on the other hand, asserts that there was a further duty to warn of the hazards below the dam, and the lack of warnings indicated no discretionary function was performed by the Resource Manager. The plaintiff points to several cases, *Smith v. United States, supra;* and *Stephens v. United States,* 472 F.Supp. 998 (C.D.Ill.1979); and *Price v. United States,* 530 F.Supp. 1010 (S.D.Miss.1981), wherein the government may have been negligent in not warning of hazards. However, each case concerns a hidden or concealed danger. The government may be found liable where it conceivably is under no duty to warn but nevertheless does so and does so negligently by providing inadequate warnings upon which a user of the land relied to his detriment. Here, however, no warning signs or devices existed, and Thomas Darren Chrisley was not alleged to have relied upon any warnings by the government.

On the contrary, several cases indicate that the United States has no duty to warn of conditions which are not hidden. In *Fitzgerald v. Alba,* 261 F.Supp. 915 (S.D.N.Y.1966), the lack of a guard rail on a pier was not found to be a hidden defect, and the government had no duty to warn of the condition. Also in *Harmon v. United States,* 532 F.2d 669 (9th Cir.1975), the United States Forest Service was found not to have had a duty to warn of hazardous boating conditions in the obviously turbulent high waters of the Salmon River which gave rise to claims on behalf of individuals who attempted to raft the river. And in *Henretig v. United States,* 490 F.Supp. 398 (S.D.Fl.1980), the National Park Service was found not to have had a duty to warn the plaintiff of a steep incline of a path, and further that had the plaintiff in that case watched carefully where she placed her feet, she would have avoided her fall.

In this action, Thomas Darren Chrisley was familiar with the area and, indeed, had fished at the location on the day before his fall into the river. His father had warned him of the dangers of the bank area and the turbulent waters. The turbulence of the waters was increased by the waters' passage through the sluice gates at the bottom of the dam, but such turbulence was a constant condition which would have been observable by them when they visited the area on June 16, 1983, and June 17, 1983. Furthermore, it is undisputed that Thomas Darren Chrisley was not swept from the riverbank by an increased current of water which he would not have been able to anticipate but rather fell from a rock outcropping on the bank some six to ten feet above the water level.

■ Clearly the Resource Manager's actions do not concern operational details, but reflect an executive's decision that resulted in the policy that the public would not be denied access to a particular area at a government project. As the agency official in charge of the resource project, the Resource Manager utilized his best judgment to determine which area would be restricted and where warnings would be posted. He did not feel that the concerned area needed to be restricted to the public, nor did he think that signs and devices warning of obvious hazards were required. The Resource Manager did exercise discretion in his administration of this water resource project. His restricting or not restricting certain areas and his posting or not posting warning signs fall within the exception of the Federal Tort Claims Act provided by 28 U.S.C. § 2680(a), and consequently, cannot form a basis for liability. Therefore, since the United States has not waived sovereign immunity, this Court would lack subject matter jurisdiction over the claims asserted by the plaintiff and should accordingly dismiss this action.

II. *The duty of a landowner to persons entering his premises and the South Carolina Limitation on Liability of Landowners Act. S.C. Code of Laws, §§ 27–3–10, et seq.*

Assuming, for purposes of argument, that the actions of the Resource Manager

were not performances of acts within the discretionary function exception, particularly with regard to the issue of warnings, there would still be no duty owed the decedent which was breached by the defendant, United States.

■ The Federal Tort Claims Act is a procedural statute which requires that this court look to the place of the act or omission to determine the applicable substantive law, and the United States may be held liable only to the extent that a private individual would be under the same circumstances. *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Since the plaintiff alleges a failure to post warnings of hazards on the South Carolina riverbank or to restrict access to that riverbank, South Carolina would provide the appropriate substantive law.

Under an analysis of South Carolina case law, a plaintiff must prove three elements in order to recover for negligence of the defendant's agent: a duty on the part of the defendant, a breach of that duty by an act of omission or commission, and an injury to the plaintiff proximately caused by the breach of that duty. *Sherrill v. Southern Bell Telephone and Telegraph Co.,* 260 S.C. 494, 197 S.E.2d 283, 285 (1973). And a person cannot recover damages of another unless the second has failed to discharge a duty which he owed to the first. *Hill v. Broad River Power Co.,* 151 S.C. 280, 148 S.E. 870, 871 (1929).

■ As a person privileged to enter upon the lands of the United States, Thomas Darren Chrisley would normally be a licensee to whom no duty would be owed except—

(a) to use reasonable care to discover him and to avoid injury to him in carrying on activities upon the land; and

(b) to use reasonable care and warn him of any concealed dangerous conditions or activities which are known to the possessor, or of any change in the condition of the premises which may be dangerous to him, and which the possessor may be reasonably expected to discover. *Frankel v. Kurtz,*

239 F.Supp. 713, 717 (W.D.S.C.1965). If the danger, however, is not hidden from the licensee but rather is patent, and an ordinary person of reason and prudence would reasonably and normally be expected to see and avoid the same, the possessor owes no duty to warn of the danger. *Id.,* at 717. Furthermore, there is no common law duty for the United States to maintain safe conditions on a navigable stream which it owns. *Faust v. South Carolina Highway Dept.,* 721 F.2d 934 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1983).

Additionally, South Carolina is one of over forty states, which to encourage landowners to make land and water areas available to the public for recreational purposes, have enacted legislation which places limitations upon the duty which the possessor of land owes to persons using the land for recreation. S.C.Code of Laws, §§ 27–3–10, *et seq.* Under South Carolina law, an owner of land owes no duty of care to keep the premises safe for entry thereon or use by persons who have sought and obtained permission to use it for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to such persons entering for recreational purposes. S.C.Code of Laws, § 27–3–30. Furthermore, the landowner who permits without charge a person who is granted permission to use the land for recreation does not thereby: extend any assurance that the premises are safe for any purpose, confer upon such person using the land the legal status of an invitee or a licensee to whom a duty of care is owed, or assume responsibility for, or incur liability for, any injury to persons or property caused by an act or omission of such persons. S.C.Code of Laws, § 27–3–40.

The Act on Limitation of Landowners Liability does not, however, limit the liability which would otherwise exist for grossly negligent, willful, or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. S.C.Code of Laws, § 27–3–60. The plaintiff now alleges that she will show that the defendant was grossly negligent, willful, or malicious in its failure to restrict or provide warnings

of dangerous conditions. She directs this court's attention to cases wherein the United States' failure to act has been deemed a willful breach of its duty. Again each case cited by the plaintiff [*Miller v. United States*, 442 F.Supp. 555 (N.D.Ill.1976); *Stephens v. United States, supra;* and *Richards v. United States*, 248 F.Supp. 99 (D.Okla.1965),] deals with a condition which was concealed or hidden from the land user. There has been no showing whatsoever whereby this Court could conclude that the hazards of the area were concealed from Thomas Darren Chrisley. Moreover, there is no showing that the government in this case induced reliance by Thomas Darren Chrisley upon a belief that the bank was an area without dangers. This is not a case where inadequate warnings provided a false concept of an area free of danger, but rather, a situation where the dangers of the area would be apparent to anyone who came upon the land, and there were no postings of inadequate warnings. Indeed, because of the obviousness of the swift currents and of the steep, wooded, and rocky shoreline, no signs or devices to warn of these hazards were necessary.

While the court may be hesitant to grant summary judgment when an issue of willfulness is raised, the existence of such an issue does not preclude summary judgment when the requirements of such are nonetheless satisfied. Gross negligence in South Carolina is the want of even slight care and diligence. It is a greater want of care than is to be understood by the term ordinary care. *Frankel v. Kurtz, supra,* at 718. Characterizations of actions deemed to be reckless, willful, or wanton stem primarily from cases involving automobile accidents which hold actions classified as such are committed under circumstances "that a person of ordinary reason and prudence would have been conscious of it as an invasion of the rights of the deceased." *Powell v. Simmons,* 258 S.C. 242, 188 S.E.2d 386, 388 (1972) (citing *Suber v. Smith,* 243 S.C. 458, 134 S.E.2d 404 (1964)). However, with the case of *Honea v. West Virginia Pulp and Paper Co.,* 380 F.2d 704 (4th Cir.1967), the Fourth Circuit Court of Appeals noted that there may be a distinction between willfulness which exists in a case involving a dangerous instrumentality—an automobile—and willfulness in a situation involving the duty of a landowner to those persons who use his premises. In that case the Fourth Circuit in affirming a decision involving a South Carolina District Court's refusal to submit the issue of the defendant's willful, wanton, and reckless misconduct to the jury, stated:

> An owner or occupier of land or buildings owes to persons invited upon the premises the duty of exercising reasonable care for their safety and must warn them of *hidden* dangers of which they are unaware. However, he need not warn them of open and obvious dangers which would be discovered through the exercise of reasonable diligence and care. *Id.,* at 710, (citing *Bruno v. Pendleton Realty Co.,* 240 S.C. 46, 124 S.E.2d, 580, 95 A.L.R.2d 1333 (1962); *Baker v. Clark,* 233 S.C. 20, 103 S.E.2d 395 (1958); *Bolen v. Strange,* 192 S.C. 284, 6 S.E.2d 466 (1939)).

It is undisputed that Thomas Darren Chrisley was familiar with the area below the dam. He had fished in the location prior to the date of his fall into the river, and he had been warned by his father of the dangers of the bank area and of the turbulent waters. The turbulence of the waters would have been apparent to him on June 16, 1983, and June 17, 1983. Unquestionably, Thomas Darren Chrisley was not swept from the riverbank by an unanticipated rise in the level of the water, but rather fell from a rock outcropping along the bank to the water below. To hold that a failure to post a warning sign telling bank fishermen that they may fall from rocks along a shoreline into the river below would constitute grossly negligent, willful or malicious conduct is contrary to common sense.

▆ With the admitted obvious hazards existent at the site where young Chrisley fell into the river and with the application of South Carolina's law regarding a landowner's liability, there existed no duty on the part of the United States acting through the United States Army Corps of Engineers to provide for Thomas Darren

Chrisley a safe premises or to give to him any warning of dangerous conditions, uses, structures, or activities on such premises. *See, e.g., Livingston v. Pennsylvania Power and Light Co.*, 609 F.Supp. 643 (D.C.Pa. 1985). Where there is not a duty owed to the plaintiff there can be no negligence on the part of the defendant.

Therefore, for the foregoing reasons, this Court hereby concludes that the defendant United States' Motion for Dismissal, or in the Alternative, Summary Judgment should be granted in that the plaintiff has failed to state a claim upon which relief may be granted.

It is unnecessary in light of this ruling to rule upon the defendant's Motion to Strike.

IT IS SO ORDERED.