15797

POSTON v. SOUTHEASTERN CONST. CO. *ET AL.*

(36 S. E. (2d), 858)

*Messrs. Mitchell & Horlbeck,* of Charleston, Counsel for Appellants,

*Messrs. McEachin & Townsend,* of Florence, Counsel for Respondent,

January 31, 1946.

MR. CHIEF JUSTICE BAKER delivered the Opinion of the Court.

The respondent testified, in substance, that on or about November 21 (it developed that it was on November 23), 1942, he was working on the top of a building for the appellant, Southeastern Construction Company, and while guiding a wooden truss, being lowered by a crane, into place, "a puff of something from the truss filled both eyes"; that the substance melted before he could get it out of his eyes, and that his eyes soon became so inflamed and ran so continuously that he could not work; that the company nurse sent him to a doctor but the doctor could do nothing for him, and the next day he was sent to Dr. Price, eye specialist; that his eyes continued to pain him and make it impossible for him to see well, and had never improved in vision since that time, but, if anything, had grown worse; that he had used glasses before the injury only to protect his eyes from foreign substances such as dust while bailing hay or tearing buildings down, but had been compelled to use glasses prescribed by Dr. Price since that time; that even with such glasses he could not see to do interior work and for that reason could hold only certain carpenter jobs; that prior to his injury he had been able to do any kind

of carpenter work without glasses, and, as stated above, used them only for protection against foreign substances.

This was the only testimony on behalf of the respondent.

The only testimony on behalf of the appellant was that of Dr. F. R. Price, an eye, ear, nose and throat specialist located at Charleston. Dr. Price testified that the respondent came to him about November 25, 1942, with his left eye "red and inflamed and irritated and it was evident that he had conjunctivitis which might be caused from any cause"; that there was no evidence of trauma and he washed out the eye and put antiseptic drops into it; that conjunctivitis may be caused from bacteria in it, or it may be traumatic, and could be both; that on November 27, the condition of the eye was improved, and on November 30 the eye was getting along pretty well; that on December 3 the eye was still red and inflamed and he took a blood test to ascertain if anything was delaying the healing process; that on December 7 the eye showed a slight greyish infiltration of the cornea, so on December 9. he did refactory of the eye to see just what was the condition of his vision. Dr. Price then entered upon his findings as to the vision of both eyes, and that he prescribed glasses for him, and on December 20 "told him that he had a high degree of farsightedness and that he should wear glasses all the time"; that he re-examined respondent on June 10, 1943, and there was no evidence of any damage, past or present, to the cornea of the eye; that respondent had been farsighted all his life, usually due to default in the growth of the eyeball; and that he was not just giving an opinion, but was stating a medical fact; and that the farsightedness with which respondent was affected could not in any way be attributed to anything he might have got in his eye.

It will be perceived from the foregoing that on the part of the respondent, there is testimony that prior to something getting into his eyes while he was guiding a wooden truss, the respondent could see well enough, and without the aid of glasses, to perform inside carpenter work, and that thereafter, even with the aid of glasses, he could not;

and that on behalf of the appellants, the medical testimony (the only testimony offered by appellants) is emphatic that respondent's continuous inability to see sufficiently to do inside carpenter work after his accident did not result from the accident; and that there was no permanent injury to either of the respondent's eyes attributable to the accident.

The issue before the Court is: was there any evidence tending to prove that the respondent sustained an accidental injury, resulting in loss of vision, arising out of and in the course of his employment?

If this were a case at common law being tried before a jury, the trial Judge would have to submit the issue to the jury, because there is a conflict between what the respondent alleges to be the facts, and the medical testimony. And the same principle governs where a case is before the Industrial Commission under the Workmen's Compensation Act. As was stated in *Moyle v. Mutual Life Insurance Company*, 201 S. C., 146, 21 S. E. (2d), 561, "* * * a medical opinion which conflicts with the physical facts will not be permitted to control the determination of a factual controversy."

It is true that Dr. Price testified that he was not merely stating his opinion, but that he was stating a medical fact, yet we doubt that until medical science has made additional progress, in an injury such as the one under discussion, the courts of this State would be justified in accepting a "medical fact" as determinative where there is testimony of physical facts contradictory. We of course realize that there are instances where a physician can determine to a certainty that an injury is not a contributory factor.

We are in no wise disparaging medical testimony. In fact it is recognized as being entitled to great respect in the case of *Anderson et al. v. Campbell Tile Co.*, 202 S. C., 54, 24 S. E. (2d), 104, where this Court quoted with approval from 32 C. J. S., 396 as follows: "The opinions of physicians or medical experts may constitute substantial evidence, sufficient to support a finding, verdict or judgment, but their credibility, and the weight of their testimony is for the jury

or other trier of the facts." And again, in *Baker v. Graniteville Company,* 197 S. C., 21, 14 S. E. (2d), 367, in reversing the finding of the Industrial Commission, which had been affirmed by the Circuit Court, it is stated:

"The testimony of the physicians as to the want of any causal connection between the traumatic injury and the erysipelas from which Baker died was not binding upon the Industrial Commission. The opinion of an expert witness is intended to aid the commission in coming to a correct conclusion, and the weight and credit to be given such testimony was a matter, of course, to be determined by the commission. But when the commission in effect disregards such expert testimony it must perforce find other competent evidence in the record upon which to base its findings. The evidence given by the physicians is that the trauma suffered by Baker was not a factor in accelerating or aggravating the infection and septicemia which was virulent in Baker's blood stream when he received the blow. And there is no other evidence in the record except such as is based upon surmise and conjecture, upon which the findings of the commission can be planted."

There being some testimony to support the claim of the respondent, the judgment appealed from is affirmed.

MESSRS. ASSOCIATE JUSTICE STUKES, TAYLOR and OXNER concur.

MR. ASSOCIATE JUSTICE FISHBURNE did not participate.