489 S.E.2d 647

**Tommie C. BROOKS, Appellant,**

v.

**NORTHWOOD LITTLE LEAGUE, INC., Northwood Middle School, and The Greenville County School District, Respondents.**

No. 2679.

Court of Appeals of South Carolina.

Heard Feb. 4, 1997

Decided June 9, 1997.

Rehearing Denied Sept. 3, 1997.

Joseph G. Armstrong, Foster & Foster, Greenville, for appellant.

James D. Brice and C. Stuart Mauney, Gibbes, Gallivan, White & Boyd; and Matthew P. Utecht, Haynsworth, Marion, McKay & Guefard, Greenville, for respondents.

HEARN, Judge:

This is a negligence case. Tommie C. Brooks appeals from the trial judge's grant of summary judgment in favor of Northwood Little League, Inc., Northwood Middle School, and the Greenville County School District, Respondents. Brooks argues the judge erred in applying South Carolina's Recreational Use Statute to bar her claim and finding she was a licensee. We disagree and affirm.

## FACTS

In May 1993, Brooks injured her ankle on the grounds of Northwood Middle School while attending her granddaughter's Little League T-ball game. She incurred approximately $9,000 in medical expenses as a result of her accident. Brooks was returning to the bleachers from a concession stand where she had purchased refreshments when she fell and twisted her ankle. She asserts she stepped into a "hole" or "trench." [1] She stated she failed to notice it because grass growth obscured the depression from view. On her way to the concession stand, she had walked over the same area without incident.

After the accident, Brooks had surgery to repair the damage and missed six weeks of work. She initiated this lawsuit in July 1994. Following discovery, the Respondents moved for summary judgment. The trial judge granted their motions, holding the Recreational Use Statute barred Brooks' claims. He also held that even if the Recreational Use Statute did not apply, Brooks qualified as a licensee and was thus not entitled to recover from the Respondents for her injuries.

## DISCUSSION

Brooks argues the trial judge erred in granting summary judgment in favor of the Respondents. First, she asserts

---

**1.** The "hole" in which Brooks stepped was apparently a small, trench-shaped depression caused by rainwater run-off.

South Carolina's Recreational Use Statute does not apply to her claim. Second, she asserts the Respondents' conduct amounted to gross negligence. In the alternative, she argues that she qualified as an invitee and was owed a higher standard of care than a licensee. We disagree.

■ Summary judgment is appropriate where it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Rakestraw v. South Carolina Dep't of Highways and Pub. Transp.*, 323 S.C. 227, 229, 473 S.E.2d 890, 892 (Ct.App. 1996). When there is no dispute as to evidentiary facts, but only as to the inferences to be drawn from them, summary judgment should be denied. *Id.* However, when the evidence is susceptible of only one reasonable interpretation, summary judgment may be granted. *See Clyburn v. Sumter County Sch. Dist. No. 17*, 317 S.C. 50, 52, 451 S.E.2d 885, 887–88 (1994).

## I.

In 1962, our legislature passed the Limitation on Liability of Landowners Act, commonly known as the Recreational Use Statute, to encourage landowners to make land and water areas available to the public. S.C.Code Ann. §§ 27–3–10 to 27–3–70 (1991). Its provisions shield landowners from liability to "persons who have sought and obtained [their] permission to use [their land] for recreational purposes." S.C.Code Ann. § 27–3–30. Landowners owe "no duty of care to keep the premises safe" for recreational users and need not "give any warning of a dangerous condition, use, structure or activity" on the property. *Id.* In tandem with this grant of immunity, the legislature broadly defined "recreational purpose" as follows:

" "Recreational purpose" includes, *but is not limited to,* any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, *summer and winter sports* and viewing or enjoying historical, archaeological, scenic, or scientific sites."

S.C.Code Ann. § 27–3–20(c) (emphasis added).

The immunity afforded by section 27–3–30 is not absolute. Two exceptions exist. First, landowners may not claim immu-

nity for gross negligence. S.C.Code Ann. § 27–3–60(a). Second, unless the landowner is the State or its political subdivision, landowners may not assess a charge. S.C.Code Ann. § 27–3–60(b).

Our research reveals no South Carolina case on point.[2] Courts in other states examining similar issues have reached conflicting results, despite the straightforward purpose and relative uniformity of landowner immunity legislation. *See, e.g., Redinger v. Clapper's Tree Serv. Inc.,* 419 Pa.Super. 487, 615 A.2d 743, 745 (1992), *appeal denied,* 533 Pa. 652, 624 A.2d 111 (1993) (noting "widespread conflict" among the jurisdictions concerning what type of land is intended to be covered); *De Baritault v. Salt Lake City Corp.,* 913 P.2d 743, 746 (Utah 1996) (noting inconsistency of case law); Robin Cheryl Miller, Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User,* 47 A.L.R.4th 262 (1986) (cases discussed therein).

Although reported cases follow no clearly identifiable liability trend, several commentators have concluded that the majority approach appears to limit immunity to injuries occurring in rural or undeveloped areas. *See, e.g.,* John C. Becker, *Landowner or Occupier Liability for Personal Injuries and Recreational Use Statutes: How Effective is the Protection?,* 24 Ind.L.Rev. 1587, 1611 (1991) (noting "decidedly rural focus" followed by most courts in interpreting landowner immunity laws); 62 Am.Jur.2d *"Recreational Use" Statutes as Affecting Landowner's Duty of Care* § 124, at 487 (1990) ("courts have stated that the statute was intended to apply to nonresidential, rural, or semirural land"); Betty van der Smissen, *Legal Liability and Risk Management for Public and Private Entities* § 12.11, at 207 (1990) ("case interpretations emphasize that the type of areas protected are those which are natural,

---

**2.** We note, however, that the United States District Court for the District of South Carolina has cited South Carolina's Limitation on Liability of Landowners Act in the context of a suit brought against the federal government pursuant to the Federal Tort Claims Act. *Chrisley v. United States,* 620 F.Supp. 285 (D.S.C.1985), *aff'd by* 791 F.2d 165 (4th Cir.1986). The court opined that the Limitation on Liability of Landowners Act would bar the plaintiff's suit because under the Act landowners owe no duty to recreational users injured on their property, except in cases where landowners have been grossly negligent in their failure to warn against dangerous conditions. *Id.* at 291–92.

unimproved, and undeveloped"); *but see, e.g., Opheim v. Lorain,* 94 Ohio App.3d 344, 640 N.E.2d 897, 898, *appeal dismissed by* 70 Ohio St.3d 1440, 638 N.E.2d 1043 (1994) ("Numerous cases have found immunity from liability for injuries which occurred on city or suburban property."); *Redinger,* 615 A.2d at 750–51 (holding "urban or mixed use land is not outside the ambit of [Recreational Use of Land and Water Act]").

Some courts have focused on the nature of the land itself and have established prerequisites to immunity, namely that the land qualifying for protection is: (1) rural, (2) undeveloped, (3) appropriate for the type of activities listed in the statute, (4) open to the public free of charge, and (5) of a type that would have opened in response to the state's recreational use statute.[3] By contrast, other courts have focused on the definition of "recreational purpose" [4] or "user," [5] while others have examined whether the landowner assessed a "charge." [6]

---

**3.** *See* Betty van der Smissen, *Legal Liability and Risk Management for Public and Private Entities* § 12.11, at 207–09 (1990); *see also Ferres v. City of New Rochelle,* 68 N.Y.2d 446, 510 N.Y.S.2d 57, 502 N.E.2d 972, 977 (1986) (holding municipality opened suburban park without the encouragement of the New York Recreational Use Act); *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445, 451 (1991) (holding plaintiff could recover under recreational use statute where injury occurred on city's basketball court); *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 507 A.2d 1, 9 (1986) (holding recreational use statute did not apply to indoor swimming pool operated by a seminary); *De Baritault v. Salt Lake City Corp.,* 913 P.2d 743, 748 (Utah 1996) (holding urban park outside scope of Limitation of Landowner Liability Act).

**4.** *See Catanzarite v. City of Springfield,* 32 Mass.App.Ct. 967, 592 N.E.2d 752, 752–53 (1992) (holding recreation includes active participation as well as passive spectating); *Fetherolf v. State, Dep't of Nat. Resources, Div. of Parks & Recreation,* 7 Ohio App.3d 110, 454 N.E.2d 564, 566 (1982) (holding watching others swim while sitting on the beach qualifies as recreational activity).

**5.** *See McGhee v. City of Glenns Ferry,* 111 Idaho 921, 729 P.2d 396, 397 (1986) (qualifying child as a recreational user to bar suit against city where child suffered injuries on a city park's swing).

**6.** *See Flohr v. Pennsylvania Power & Light Co.,* 800 F.Supp. 1252, 1256 (E.D.Pa.1992) (holding campsite rental fee was not a charge as defined by Pennsylvania's Recreation Act where fee was assessed to use a campsite but not for permission to enter park's recreational area);

We do not find these distinctions helpful, however, because using them contributes to the "tortured tapestry of decisional law." *Redinger*, 615 A.2d at 746.

While it is arguable that our legislature intended to limit the application of our recreational use statute to rural and undeveloped areas—as opposed to semi-rural and urban ones—we have no evidence of this intent. In fact, the broad language adopted by our legislature suggests most strongly that it deemed the need for recreational lands in urban areas to be as great as in rural ones. By contrast, most cases that have limited recreational use statutes to rural land have based their holdings on statutory language or clear legislative purpose. *See, e.g., Keelen v. State of Louisiana, Dep't of Culture, Recreation & Tourism*, 463 So.2d 1287, 1290 (La.1985) (concluding statutory purpose suggested immunity applied only to rural or semi-rural land); *Labree v. Millville Mfg., Inc.*, 195 N.J.Super. 575, 481 A.2d 286, 289–90 (Ct.App.Div.1984) (finding "beyond cavil" that legislature intended landowner immunity statute to apply only to rural and semi-rural properties); *Ferres v. City of New Rochelle*, 68 N.Y.2d 446, 510 N.Y.S.2d 57, 502 N.E.2d 972, 976–77 (1986) ("statute was originally envisioned as applying to undeveloped or wilderness areas"); *Tijerina v. Cornelius Christian Church*, 273 Or. 58, 539 P.2d 634, 636–37 & n. 1 (1975) (legislative history and express statutory language limit recreational immunity to agricultural land, rangeland, or forestland); *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 510 Pa. 1, 507 A.2d 1, 8 (1986) (legislative intent to limit statute's applicability to unimproved land "is evident ... from the Act's stated purpose").

In South Carolina, the primary rule of statutory construction is to give statutes their plain and ordinary meaning where the statute's language is unambiguous. *Adkins v. Varn*, 312 S.C. 188, 191, 439 S.E.2d 822, 824 (1993) (noting

*Hogue v. Stone Mountain Memorial Ass'n*, 183 Ga.App. 378, 358 S.E.2d 852, 854, *cert. denied*, (Sept. 8, 1987) (holding Georgia's Recreational Property Act barred plaintiff's claims where $4 registration fee was a permit to use her vehicle on park grounds and not a charge); *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309, 313 (1984) (holding Recreation Liability Act barred plaintiffs' claim where plaintiffs paid no admission fee).

courts must not resort to forced construction to limit or expand a statute's operation). The plain language of our recreational use statute's provisions clearly protects the Respondents because it grants immunity to "landowners."[7] S.C.Code Ann. §§ 27–3–10 to 27–3–70; *see also T.W. Morton Builders, Inc. v. von Buedingen,* 316 S.C. 388, 402, 450 S.E.2d 87, 95 (Ct.App.1994) (noting courts may consider a statute's title in aid of construction to show legislative intent). This textualist approach anchors statutory meaning in the historical purpose of the text: to open up land for recreational use by the public. *See* S.C.Code Ann. § 27–3–10 (declaring legislative intent to make land available for recreational use). In our view, a statute does not apply only to facts in existence at the time of its adoption. Statutes must be updated functionally to reflect changes in technology, terminology, and the legal landscape. Our conclusion reflects not only the plain meaning of the Limitation on Liability of Landowners Act, but also gives effect to legislative intent in light of the purposes the statute was meant to achieve.[8]

Brooks qualifies as a recreational user because her attendance at the game was for a recreational purpose. Even though section 27–3–20(c) does not expressly list "T-ball" as a recreational purpose, T–Ball qualifies as a "summer sport." Moreover, by its very terms, section 27–3–20(c) was not intended to be an exhaustive enumeration of recreational activities. Therefore, section 27–3–20(c) invites judicial expan-

---

7. S.C.Code Ann. § 27–3–20(b) defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises."

8. Brooks argues the drafters of the statute could not have intended it to apply to governmental entities because, at the time of drafting, governmental entities were protected by the doctrine of sovereign immunity. However, there is nothing in the language of the statute which limits its application; all "landowners" are protected.

We also note that although Northwood Middle School and Greenville County School District raised the South Carolina Tort Claims Act, S.C.Code Ann. §§ 15–78–10 to 15–78–190 (Supp.1996), as a defense in their Answer to Amended Complaint, their motion for summary judgment was based on the applicability of the Limitation on Liability of Landowners Act. The trial judge, therefore, did not consider whether the Tort Claims Act applied. Moreover, no party raises this issue on appeal.

sion where the plain meaning of the statute would not be distorted.

Brooks also argues the Respondents are not immune from suit because she did not receive their permission to attend the game. We disagree. The public was invited to attend the ball game free of charge; permission was clearly implied. We do not read sections 27–3–30 and 27–3–40 as requiring a *quid pro quo*. Therefore, the trial judge correctly held that the Recreational Use Statute applied.

## II.

■ Section 27–3–60 provides a gross negligence exception to the immunity afforded under section 27–3–30. "Gross negligence" is the intentional, conscious failure to do something which one ought to do or the doing of something one ought not to do. *Clyburn*, 317 S.C. at 53, 451 S.E.2d at 887; *Rakestraw*, 323 S.C. at 231, 473 S.E.2d at 893.

■ Gross negligence ordinarily presents a hybrid question of law and fact, but when evidence supports but one reasonable inference, the question becomes one of law for the court. *Clyburn*, 317 S.C. at 53, 451 S.E.2d at 887–88. In determining whether summary judgment is proper, the court must construe inferences arising from the evidence against the moving party. *Id.*

■ Viewing the evidence in the light most favorable to Brooks, we find the record is devoid of any evidence of an intentional, conscious failure on the part of the Respondents. The evidence presents only one reasonable inference: The Respondents were not grossly negligent. The trial judge, therefore, properly held the Respondents were not grossly negligent as a matter of law.

## III.

Brooks next contends that if South Carolina's Recreational Use Statute does not bar her claim, she qualifies as an "invitee" because she purchased several items at the Little League's concession stand and paid her granddaughter's team participation fee. We need not address this issue because we hold the Statute bars Brooks' claims.

Accordingly, the decision of the trial judge is
**AFFIRMED.**

STILWELL and HOWARD, JJ., concur.