532 S.E.2d 10

**Barbara RICHARDSON, Individually and as Guardian ad Litem of Dannie T. Richardson, a minor, Appellant,**

**v.**

**CITY OF COLUMBIA, South Carolina, City of Columbia Department of Parks & Recreation, and Richland County Recreation Commission, Respondents.**

No. 3170.

Court of Appeals of South Carolina.

Heard Feb. 10, 2000.

Decided May 22, 2000.

Rehearing Denied July 8, 2000.

516

W. Lamar Flatt, of Best & Flatt, of Columbia, for appellant.

Kenneth E. Gaines, of Office of the City Attorney, for City of Columbia and City of Columbia Department of Parks & Recreation; and D. Clay Robinson, of Robinson, McFadden & Moore, for Richland County Recreation Commission; both of Columbia, for respondents.

MOREHEAD, Acting Judge:

Barbara Richardson initiated this negligence action against the City of Columbia, the City's Department of Parks and Recreation, and the Richland County Recreation Commission (collectively, "Respondents") for injuries her son, Dannie, sustained while at Greenview Park. The circuit court granted summary judgment in favor of Respondents, finding they were immune from liability under the South Carolina Recreational Use Statute, S.C.Code Ann. §§ 27–3–10 to –70 (1991 & Supp. 1999), and the South Carolina Tort Claims Act, S.C.Code Ann. §§ 15–78–10 to –200 (Supp.1999). Richardson appeals. We affirm.

## FACTS

The Richland County Recreation Commission owns Greenview Park. The park consists of more than twenty-one acres and contains two baseball fields. The smaller baseball field has been enclosed with cyclone fencing since about 1969. The park contains a natural creek or drainage ditch that runs parallel to the first base side of the smaller baseball field. In June 1987, the County reconstructed a segment of the drainage ditch by installing large underground drainage pipes and

covering the pipes with soil. The County placed fencing around the intake areas for the pipes.

The County later leased the property to the City of Columbia for use as a park under a ninety-nine-year lease. The City took possession of the park on January 1, 1993. Under the lease, the City is solely responsible for the maintenance of the property and the facilities.

On June 14, 1995, Dannie Richardson, then eleven years old, went to Greenview Park to participate in a baseball game organized by the Greenview Dixie Youth Baseball League. The Greenview coaches were volunteers, not employees of the Respondents.

Dannie's coach, Ricky Ricardo Dykes, instructed the players to arrive at the park at 6:00 p.m. for a 7:15 p.m. game. While waiting for the game to begin, Dannie and some other players stood outside the fence of the smaller baseball field on the first base side to catch foul balls from a game in progress. According to Dannie, a pop-up foul ball came over the fence, and he ran to get it. The ball stopped about one foot from the edge of the ditch. Dannie leaned over and picked it up but then dropped it. When he leaned over to pick it up again, the edge of the ditch collapsed and he fell "[s]traight down," breaking his leg.

Richardson filed this action against Respondents on May 8, 1997, for her son's injuries. Respondents claimed immunity from liability under the Recreational Use Statute and the Tort Claims Act. The court granted summary judgment to the Respondents. The court found the action was barred by the Recreational Use Statute because there was no evidence Respondents acted with gross negligence and, alternatively, the action was barred by the Tort Claims Act because there was no evidence Respondents had actual notice of the condition. Richardson appeals.

## STANDARD OF REVIEW

Summary judgment is proper only when it is clear there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 443 S.E.2d 392 (1994) (quoting Rule 56(c), SCRCP). In determining whether any

triable issues of fact exist, the evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing summary judgment. *Hamiter v. Retirement Div. of the S.C. Budget & Control Bd.*, 326 S.C. 93, 484 S.E.2d 586 (1997).

## DISCUSSION

### I.

■ Richardson first asserts the court erred in applying the Recreational Use Statute, enacted in 1962, to her claims. She argues that only the Tort Claims Act, enacted in 1986, is applicable to her claims because "specific laws prevail over general laws, and later legislation takes precedence over earlier legislation."[1] The court rejected Richardson's argument below, finding the two statutes were "easily reconciled." The court concluded the Recreational Use Statute, therefore, applied to Respondents in this case.

■ When two statutes can be reconciled, the court must construe the statutes in such a way that both remain functional. *Porter v. South Carolina Pub. Serv. Comm'n*, 327 S.C. 220, 224 n. 3, 489 S.E.2d 467, 469 n. 3 (1997). The more recent statute takes precedence over the earlier statute only if there is a conflict between the two statutes. *Id.; see also Heffner v. Destiny, Inc.*, 321 S.C. 536, 471 S.E.2d 135 (1995) (where general statute conflicts with specific statute, the specific statute is controlling); *Williams v. Town of Hilton Head Island*, 311 S.C. 417, 429 S.E.2d 802 (1993) (where it is not possible to harmonize two statutes, the later enactment supersedes the earlier legislation).

---

**1.** While this court has addressed the issue of whether the Recreational Use Statute applies to a governmental entity, *see Brooks v. Northwood Little League, Inc.*, 327 S.C. 400, 489 S.E.2d 647 (Ct.App.1997), the issue presented in this case is novel to South Carolina law. In *Brooks,* we noted that the school and the county had raised the Tort Claims Act as a defense in their answer, but their motion for summary judgment was based on the applicability of the Recreational Use Statute rather than the Tort Claims Act. The trial court did not consider the additional ground of the immunity afforded by the Tort Claims Act, and the parties did not raise the issue on appeal. Id. at 407 n. 8, 489 S.E.2d at 651 n. 8.

The Tort Claims Act is "the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents except as provided in § 15–78–70(b)." S.C.Code Ann. § 15–78–20(b) (Supp.1999). Under the Tort Claims Act, the governmental entity is liable for torts "in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." S.C.Code Ann. § 15–78–40 (Supp.1999).

One exemption from liability contained in the Tort Claims Act provides the governmental entity is not liable for a loss caused by:

(16) maintenance, security, or supervision of any public property, intended or permitted to be used as a park, playground, or open area for recreational purposes, unless the defect or condition causing a loss is not corrected by the particular governmental entity responsible for maintenance, security, or supervision within a reasonable time after actual notice of the defect or condition.

S.C.Code Ann. § 15–78–60(16) (Supp.1999).

If Dannie's injuries resulted from an action involving the maintenance, security, or supervision of the park, then we would resolve Richardson's claims under the Tort Claims Act. If the injuries resulted from anything other than the maintenance, security, or supervision of the park, we would look at any other exemptions from liability found in the Tort Claims Act, including § 15–78–60(10). If no other exemptions apply, then we will hold the Respondents liable in the same manner as a private individual under the same circumstances, still subject to the limitations upon liability and damages contained in the Tort Claims Act. Because a private individual would be entitled to claim immunity under the Recreational Use Statute, the Respondents would be entitled to claim immunity under the Recreational Use Statute as well. *See Chrisley v. United States,* 620 F.Supp. 285 (D.S.C.1985), *aff'd,* 791 F.2d 165 (4th Cir.1986). Based on this analysis, we hold the Tort Claims Act and the Recreational Use Statute can be reconciled.

■ We now must analyze the facts of this case to determine whether the injury resulted from the maintenance, security, or supervision of the park.

Richardson alleged in her complaint that the Respondents were negligent, grossly negligent, reckless, willful, wanton and careless in several ways:

    a.  by failing to mark the embankment in a clear fashion so as to make participants aware of its presence;

    b.  in allowing a dangerous condition such as the embankment to exist in a concealed fashion, despite having actual and constructive notice of the condition;

    c.  by placing baseball fields where children would be known to be playing unreasonably close to the embankment;

    d.  in creating a dangerous condition at its park; and

    e.  in failing to take appropriate measures to make the Greenview Park reasonably safe for its users.

Each of Richardson's claims relates to the maintenance, security, or supervision of the park. We, therefore, begin our analysis of this case under § 15–78–60(16) of the Tort Claims Act.

## II.

Richardson argues on appeal the court erred in finding the Respondents were immune under the Tort Claims Act. Richardson specifically asserts a question of fact existed regarding whether the ditch was a defect, whether the Respondents had actual notice of the defect, and whether the Respondents failed to correct the defect within a reasonable period of time.[2]

Because Richardson's claims relate to the maintenance, supervision, or security of the park, the Respondents cannot be held liable for Dannie's injuries unless the defect or condition that caused his injuries was "not corrected by the particular governmental entity responsible for maintenance, security, or supervision within a reasonable time after actual notice of the defect or condition." S.C.Code Ann. § 15–78–60(16)

---

2. Richardson also argues the court erred in finding the ditch was open and obvious. The crucial issue in this case, however, is not whether the ditch was open and obvious, but whether the Respondents had actual notice of a defect or condition and failed to remedy such defect or condition within a reasonable period. We, therefore, will not address the issue of whether the ditch was open and obvious.

(Supp.1999). If the Respondents failed to correct the defect or condition within a reasonable time after actual notice of the defect or condition and no other exemptions under the Tort Claims Act applied, then the Respondents could be held liable for Dannie's injuries as if the Respondents were private individuals. *See Jackson v. South Carolina Dep't of Corrections,* 301 S.C. 125, 390 S.E.2d 467 (Ct.App.1989), *aff'd,* 302 S.C. 519, 397 S.E.2d 377 (1990). In that case, the Respondents could claim immunity under the Recreational Use Statute. *See Brooks v. Northwood Little League, Inc.,* 327 S.C. 400, 489 S.E.2d 647 (Ct.App.1997).

## A. Defect or Condition

■ Richardson argues the court erred in finding the condition was not a defect as a matter of law. Richardson argues that the existence of the ditch was a hazardous condition, i.e., a defect. Richardson apparently asserts that Dannie's injuries were caused by the existence of the ditch and the Respondents' failure to warn of the ditch.

In the order granting summary judgment to the County, the court stated "[i]t is unnecessary ... to determine whether the ground adjacent to the ditch which Plaintiff complains collapsed was a 'defect' or an 'unsafe condition.'" In the order granting summary judgment to the City, however, the court found "as a matter of law that the giving away of the earth adjacent to the drainage ditch was a naturally occurring condition rather than a defect."

The statute does not require the finding of a defect. The court merely needs to determine whether a defect *or* a condition caused the injuries. *See* S.C.Code Ann. § 15–78–60(16) (Supp.1999).

According to Dannie, he did not slide into the ditch; rather, he fell "straight down." He stated the edge of the ditch felt like quicksand. The court held:

Dannie's injury did not result from a lack of a fence, lack of a warning about the existence of the drainage ditch, or even the presence of the drainage ditch. Instead, his injury occurred because the soil on which he was standing completely gave way vertically, causing him to fall—a natural but unfortunate occurrence and one the County had no duty to warn or guard against since it never had actual notice of any defect with the bank of the ditch.

The court also held "there is no evidence of a causative link between the City's actions or inactions and the event of the earth adjacent to the drainage ditch giving way."

We agree with the court's analysis. We conclude Dannie's injuries were caused by the collapse of the edge of the ditch rather than the existence of the ditch. The case would be different if Dannie had run straight into the brush without realizing a ditch was there and had fallen into the ditch. In that case, the fact that the ditch existed would create a question of fact regarding whether the existence of the ditch was a defect. Under the facts as presented in the record, however, we must conclude that the condition that caused Dannie's injuries was the collapse of the edge of the ditch.

## B. Actual Notice

■ Richardson also argues the Respondents cannot claim they had no actual notice of the existence of the ditch because all evidence indicates they knew the ditch was there. The court found there was no evidence the Respondents had actual notice of a condition which would cause the collapse of earth adjacent to the ditch. Because we conclude Dannie's injuries were caused by the collapse of the wall of the ditch rather than the existence of the ditch, the issue here is whether the Respondents had actual notice that the edge of the ditch would collapse. We agree the Respondents had no actual notice of this condition.

■ Actual notice as stated in § 15–78–60(16) "means all the facts are disclosed and there is nothing left to investigate." *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 65, 504 S.E.2d 117, 123 (1998). "Actual notice may be shown by direct evidence or inferred from factual circumstances." *Id.*

The depositions and affidavits submitted prove the Respondents had no actual notice of the particular condition that caused Dannie's injuries. The County submitted an affidavit from Rodney Kinnett, who has been responsible for maintenance of the Richland County parks since 1979, in which he stated:

Prior to Dannie Richardson's accident, I was never aware of any instability of the surface of the bank along the edge of

the drainage ditch adjacent to the first base/right field line of the smaller baseball field at Greenview Park. . . . I have reviewed correspondence in the Commission's files regarding Greenview Park and have found no letter regarding any perceived problems with the surface of the bank of this drainage ditch.

During deposition, Clifford Brevard, a Greenview little league coach, stated that in his coaching career, he was not aware of any players besides Dannie being hurt in the ditch.

The City's Parks Maintenance Supervisor, Melvin Murphy, stated in his affidavit that the City was not aware of any complaints by maintenance workers or the public "that the grassed areas along the edge of the ditch were hazardous or giving way nor [had he] encountered any areas along the ditch in that condition." He further stated that (1) the City crews mow the grass in Greenview Park about every two weeks; (2) the grass is maintained at an acceptable height for sports such as baseball, football, and soccer; (3) the City has several public parks with open ditch lines, and tractors with six foot flail mowers have been used to mow all the way to the edge of the ditch, and in some parks the ditch lines are also mowed; (4) adults with gas-powered commercial trimmers cut, edge, and trim the grass on the edge of the ditch; and (5) vegetation was allowed to grow on the embankment for erosion control and to form a natural barrier to keep people out of the ditch, but the vegetation did not hide the ditch, as it was open and obvious and clearly visible to persons in the park.

Richardson failed to demonstrate in the record that Respondents had actual notice of any condition or defect. The only evidence is that the condition which caused Dannie's unfortunate fall was the collapse of the ground adjacent to the ditch, a condition which was unanticipated and unknown to all parties. There were no prior complaints that the area was dangerous and no prior injuries. City workers had recently worked in the area using heavy equipment to the edge of the ditch and had walked along the edges without incident. As the court observed, "[t]he danger lay hidden under the green grass and was, therefore, concealed from everyone's view." Because the land supported the adults, no one could anticipate that the edge of the ditch would not support the weight of a child. Respondents, thus, had no actual notice of the condition.

## C. Failure to Correct

Because we find the Respondents did not have actual notice of the condition that caused Dannie's injuries, we cannot hold the Respondents liable for failing to correct the condition prior to Dannie's fall.

## CONCLUSION

The court did not err in determining as a matter of law that Respondents were immune from liability under S.C.Code Ann. § 15–78–60(16) of the Tort Claims Act.[3] For the foregoing reasons, the decision of the court granting summary judgment to Respondents is

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.

---

**3.** Because we find the Respondents were immune from liability under § 15–78–60(16), we need not address Richardson's arguments that the court erred in finding that the Respondents were not grossly negligent under the Recreational Use Statute and the Respondents were immune under § 15–78–60(10).