THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED 
 ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
 
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 
 Courtney Danielle Saxon, Appellant,
 
 
 

v.
 
 
 
 
 South Carolina Department of Transportation and Thomas Cooler, Defendants,
 of whom South Carolina Department of Transportation is Respondent.
 
 
 

Appeal From Jasper County
  Perry M. Buckner, Circuit Court Judge

Unpublished Opinion No. 2004-UP-435
 Submitted June 8, 2004  Filed July 23, 2004

AFFIRMED

 
 
 
 
 Darrell T. Johnson, Jr. and Mills Lane Morrison, Jr., both of Hardeeville, 
 for Appellant.
 I. McDuffie Stone, III, of Bluffton, for Respondent.
 
 
 

PER CURIAM:  This case arises from an automobile 
 collision.  As a result of the accident, Saxon filed suit against the South 
 Carolina Department of Transportation (DOT) for failure to maintain necessary 
 sight lines at a stop sign. [1]   
 The circuit court granted a directed verdict in favor of the DOT on the basis 
 of proximate cause and lack of notice.  We affirm. [2] 
FACTS
Saxon was driving along 
 Darby Plantation Road when she came to a stop sign and attempted a left turn 
 onto Route 39.  She stopped at the stop sign, drove her car forward to gain 
 a better view of Route 39, and then looked in both directions before turning.   
 When Saxon pulled out, Thomas Coolers vehicle struck the rear drivers side 
 door of Saxons vehicle.  Cooler was driving at or below the speed limit of 
 45 miles per hour, and he did nothing to contribute to the accident. 
Saxon filed suit against 
 the DOT for negligence, alleging it failed to maintain the vegetation along 
 Route 39 and thereby failed to maintain the proper sight line and sight distance 
 for cars entering from Darby Plantation Road.  At trial, Saxon stated that she 
 did not see another car before turning and that prior to turning she had inched 
 her car past the stop sign to see past overgrown trees and bushes.  Cooler testified 
 that he was able to see the stop sign on Darby Plantation Road, but he did not 
 see Saxons car until the accident. 
Mr. Lohr, an engineer and 
 Saxons expert witness, testified the DOT provided inadequate sight distance 
 along Route 39.  However, during cross-examination, he admitted the 468 feet 
 sight distance actually provided should have been sufficient for Saxon to detect 
 a vehicle traveling up to 47.7 miles per hour.  Because Coolers car was traveling 
 less than 47.7 miles per hour, Lohr opined the intersections sight distance 
 was safe.  Dr. King, an expert witness for the DOT, also testified the intersection 
 had more than adequate sight distance.  Additionally, a highway patrolman, who 
 investigated the accident, testified he did not observe any visual obstructions 
 the day of the accident.  The trooper also stated:  he traveled the road frequently; 
 it was his duty to report any problems such as obstructions; and he never saw 
 any problems.   
After the close of testimony, 
 the trial court granted the DOTs motion for a directed verdict because there 
 was no evidence:  (1) the accident was proximately caused by any breach of duty 
 by the DOT; and (2) the DOT had notice of the dangerous condition.  Pursuant 
 to Rule 59, SCRCP, Saxon moved for judgment notwithstanding the verdict (JNOV) 
 and for a new trial.  The court denied these motions.  Saxon appeals.
STANDARD OF REVIEW
In ruling on a motion for directed verdict, the 
 trial court is required to view the evidence and the inferences that reasonably 
 can be drawn therefrom in the light most favorable to the party opposing the 
 motion and to deny the motion where either the evidence yields more than one 
 inference or its inference is in doubt.  Creech v. South Carolina Wildlife 
 & Marine Res. Dept, 328 S.C. 24, 29, 491 S.E.2d 571, 573 (1997).  
 In deciding whether to grant or deny a directed verdict motion, the trial court 
 is concerned only with the existence or nonexistence of evidence.  Long v. 
 Norris & Assocs., 342 S.C. 561, 568, 538 S.E.2d 5, 9 (Ct. App. 2000).  
 This court can only reverse the trial court when there is no evidence to support 
 the ruling below.  Creech, 328 S.C. at 29, 491 S.E.2d at 573. 
DISCUSSION
I.
Saxon argues the trial court erred in granting 
 a directed verdict on the issue of proximate cause.  She contends the evidence 
 is conflicting and supports the conclusion that the accident was proximately 
 caused by the DOTs negligence.  Because this issue required a credibility determination, 
 she asserts it should have been submitted to the jury. 
 [3]   We disagree. 
In a negligence action, a plaintiff must show:  
 (1) the defendant owes a duty of care to the plaintiff; (2) the defendant breached 
 the duty by a negligent act or omission; (3) the defendants breach was the 
 actual and proximate cause of the plaintiffs injury; and (4) the plaintiff 
 suffered an injury or damages.  Andrade v. Johnson, 356 S.C. 238, 
 245, 588 S.E.2d 588, 592 (2003).  Proximate cause requires proof of both 
 causation in fact and legal cause, which is proved by establishing foreseeability.  
 Bray v. Marathon Corp., 356 S.C. 111, 116-17, 588 S.E.2d 93, 95 (2003).  
 Causation in fact is proved by establishing the plaintiffs injury would not 
 have occurred but for the defendants negligence. . . .  Legal cause turns 
 on the issue of foreseeability.  An injury is foreseeable if it is the natural 
 and probable consequence of a breach of duty.  Schmidt v. Courtney, 
 357 S.C. 310, 326, 592 S.E.2d 326, 335 (Ct. App. 2003).  Foreseeability 
 is not determined from hindsight, but rather from the defendants perspective 
 at the time of the alleged breach. Parks v. Characters Night Club, 345 
 S.C. 484, 491, 548 S.E.2d 605, 609 (Ct. App. 2001).  Furthermore, legal cause 
 is ordinarily a question of fact for the jury.  Only when the evidence is susceptible 
 to only one inference does it become a matter of law for the court.  Oliver 
 v. South Carolina Dept of Highways & Pub. Transp., 309 S.C. 313, 317, 
 422 S.E.2d 128, 131 (1992).  
In this case, the trial court granted a directed 
 verdict on the ground Saxon failed to present any evidence the accident was 
 proximately caused by a breach of duty by the DOT.  Specifically, the court 
 found:  (1) neither Saxon nor Cooler testified that inadequate sight distance 
 caused the accident; and (2) Saxons expert, Lohr, testified that inadequate 
 sight distance was not the cause of the accident.
Viewing the evidence in the light most favorable to Saxon, we find Saxon failed 
 to present any evidence that the DOTs failure to maintain the vegetation proximately 
 caused the accident.  Saxons own expert witness testified the sight lines were 
 insufficient because of overgrown bushes and trees only if a car was driving 
 on Route 39 in excess of 47.7 miles per hour.    However, it was stipulated 
 that the speed limit was 45 miles per hour and that Cooler was driving at or 
 below the speed limit.  Cooler also acknowledged that the bushes did not obstruct 
 his view.
Saxon argues, notwithstanding the testimony of 
 her own expert witness, the lay testimony was sufficient to submit the issue 
 of proximate cause to the jury.  Saxon refers to her direct testimony in which 
 she stated that she had to inch up before pulling out to turn left [b]ecause 
 the trees and bushes are overgrown and its kinda hard to see all the way down 
 Malphrus Road to your left.  She also points out that she and Cooler both testified 
 that even though they were looking, they did not see the other vehicle until 
 after the accident.  In light of this testimony, Saxon urges this court to reverse 
 based on Poston v. Southeastern Constr. Co., 208 S.C. 35, 36 S.E.2d 858 
 (1946), and Roscoe v. Grubb, 237 S.C. 590, 118 S.E.2d 337 (1961).    

In Poston, a workers compensation case, 
 the claimant testified that an accident at work caused his eyes to become inflamed 
 and, in turn, severely affected his vision.  Due to the accident, he was unable 
 to perform the same types of carpentry jobs he did before the accident.  The 
 treating physician testified the claimant came to him with red, inflamed, and 
 irritated eyes. In contrast to the claimants testimony, he stated, as a medical 
 fact, the claimants farsightedness could not have been caused by any event 
 but must have existed all of the claimants life.  The claimant was awarded 
 benefits for the work-related injury.  In considering the employers appeal, 
 our supreme court found that had the case been tried before a jury, the trial 
 judge would have submitted the issue to the jury because there was a conflict 
 between the claimants testimony and the medical testimony.  Poston, 
 208 S.C. at 38, 36 S.E.2d at 860.  The court stated, a medical opinion which 
 conflicts with the physical facts will not be permitted to control the determination 
 of a factual controversy.  Id. (citations omitted).  The court affirmed 
 the award of benefits, finding sufficient lay testimony that the claimants 
 reduced vision was caused by the accident.  The court pointed to the evidence 
 that prior to the accident, the claimant had been able to work as a carpenter 
 without the aid of glasses.  The court held that when expert testimony is disregarded, 
 the decision must be based on other competent evidence.  Id. at 39.
Similarly, in Roscoe, the court disregarded 
 the testimony of a physician that the decedent died as a result of an automobile 
 accident that occurred almost one year prior to the death.  Roscoe, 237 
 S.C. at 592-93, 118 S.E.2d at 338.  The court noted that where physical injury 
 is coincident with or immediately follows an accident and is naturally and directly 
 connected with it lay testimony may be sufficient to carry to the triers of 
 the facts the issue of whether or not the accident proximately caused it, despite 
 expert medical testimony that it did not.  Id. at 596, 118 S.E.2d at 
 340.  Together, these cases properly situate the expert witnesss testimony 
 as non-binding and intended to aid the fact finder.  Hines v. Pac. Mills, 
 214 S.C. 125, 132, 51 S.E.2d 383, 385 (1949).
In the instant case, expert witnesses for both 
 Saxon and the DOT testified that given the speed of Coolers vehicle there was 
 sufficient sight distance, and thus, the vegetation did not in fact cause the 
 accident.  In contrast to the pointedly different testimony in Poston, 
 neither Saxon nor Cooler testified the accident was caused by an inability to 
 properly see because of an overgrowth of vegetation.  Cooler testified he could 
 see the stop sign, but he never saw Saxons vehicle.  Saxon testified that difficulty 
 in seeing down Route 39 caused her to inch past the stop sign prior to turning, 
 and she did not see any cars prior to turning onto Route 39.  She, however, 
 did not testify she was unable to see Coolers vehicle because of the overgrowth.  
 Instead, she testified the overgrowth forced her to take another action, which 
 involved moving her car forward.  Saxon was also vague in her testimony regarding 
 how far down the road she could see.  Although she testified that she could 
 not see all the way down the road, this testimony did not quantify the sufficiency 
 of her sight distance.  Even construing Saxons testimony in the light most 
 favorable to her, as we are required to do, we find there is no testimony or 
 inferences to be drawn as to causation in fact.  Accordingly, the trial court 
 properly directed a verdict in favor of the DOT. 

II.
Saxon asserts the trial court erred in granting 
 the DOTs motion for a directed verdict on the issue of notice.  She contends 
 the issue should have been submitted to the jury because the DOT conceded there 
 was evidence of a breach of duty, which necessarily encompasses notice, and 
 moreover, the DOT failed to affirmatively show a lack of notice. 
The South Carolina Tort Claims Act provides that 
 the State, its agencies, political subdivisions, and other governmental entities 
 are liable for their torts in the same manner and to the same extent as a private 
 individual under like circumstances, subject to certain limitations and exemptions 
 with the Act.  Jinks v. Richland County, 355 S.C. 341, 344, 585 S.E.2d 
 281, 283 (2003) (quoting S.C. Code Ann. § 15-78-40 (Supp. 2002)).     Section 
 15-78-60 of the South Carolina Code provides several exceptions to the waiver 
 of sovereign immunity.  These exceptions act as limitations on the liability 
 of a governmental entity. Id. at 344, 585 S.E.2d at 283.  Among these 
 exceptions is one providing that a government entity is not liable for a loss 
 resulting from natural conditions of unimproved property of the governmental 
 entity, unless the defect or condition causing a loss is not corrected by the 
 particular governmental entity responsible for the property within a reasonable 
 time after actual or constructive notice of the defect or condition.  S.C. 
 Code Ann. § 15-78-60 (10) (Supp. 2003).  
Therefore, the DOT cannot be liable for Saxons 
 injuries unless the defect or condition that caused her injuries was not corrected 
 within a reasonable time after actual or constructive notice of the defect 
 or condition.  See Richardson v. City of Columbia, 340 S.C. 515, 
 522, 532 S.E.2d 10, 14 (Ct. App. 2000) (finding City of Columbia not liable 
 for childs injuries sustained at baseball field unless the defect or condition 
 that caused his injuries was not corrected by the particular governmental entity 
 responsible for maintenance, security, or supervision within a reasonable time 
 after actual notice of the defect or condition (quoting S.C. Code Ann. § 15-78-60(16) 
 (Supp. 1999))).  The exceptions outlined within the Act must be liberally construed 
 in favor of limiting liability.  S.C. Code Ann. § 15-78-20 (f) (Supp. 2003).  
 The burden of establishing an exception to the waiver of immunity under the 
 Tort Claims Act is upon the DOT.  Faile v. South Carolina Dept of Juvenile 
 Justice, 350 S.C. 315, 324, 566 S.E.2d 536, 540 (2002).  
The DOT sought to meet this burden by the testimony 
 of the highway patrolman.  The trooper testified that he traveled the road frequently, 
 it was his duty to report any problems, and he never saw any problems.  Furthermore, 
 a search of records showed no history of prior accidents at this intersection.  
 Based upon the stipulation that there was no record of prior accidents at this 
 intersection and the testimony of the trooper, the DOT established it did not 
 have actual notice of a dangerous condition. See Richardson, 340 
 S.C. at 525, 532 S.E.2d at 15 (holding City of Columbia did not have actual 
 notice of any condition or defect prior to childs accident at baseball field 
 where there were no prior complaints that the area was dangerous and no prior 
 injuries).  
Saxon, however, argues the DOT did have constructive 
 notice of overgrowth and reduced sight lines.  Specifically, Saxon asserts the 
 DOT was charged with constructive notice given it failed to anticipate and discover 
 the obstruction by making frequent and careful inspections. 
Constructive notice is a legal inference which 
 substitutes for actual notice.  It is notice imputed to a person whose knowledge 
 of facts is sufficient to put him on inquiry; if these facts were pursued with 
 due diligence, they would lead to other undisclosed facts. Strother v. Lexington 
 County Recreation Commn, 332 S.C. 54, 63 n.6, 504 S.E.2d 117, 122 
 n.6 (1998).  Constructive notice requires knowledge of facts sufficient 
 to have led the DOT to the danger.  The trooper, however, testified that he 
 was at the scene immediately after the accident and saw no problem with vegetation 
 overgrowth.  Despite this testimony, Saxon relies on Campbell v. South Carolina 
 State Highway Dept, 244 S.C. 186, 135 S.E.2d 838 (1964), overruled on 
 other grounds by McCall v. Batson, 285 S.C. 243, 329 S.E.2d 741 (1985) 
 (abolishing the doctrine of sovereign immunity); Inabinett v. South Carolina 
 State Highway Dept, 196 S.C. 117, 12 S.E.2d 848 (1941); and Ford v. 
 South Carolina Dept. of Transp., 328 S.C. 481, 492 S.E.2d 811 (Ct. App. 
 1997), for the proposition that the duty owed by the DOT to maintain safe roads 
 would require this court to find constructive notice and liability in this case.    

The DOT does in fact have a duty 
 to maintain safe roads and to discover and remedy potential hazards; however, 
 under the specific facts of this case, all testimony points to the existence 
 of adequate sight lines.  The DOT cannot be charged with constructive notice 
 that a dangerous condition existed when there is no testimony that any dangerous 
 condition actually existed.  Furthermore, each of the above-cited cases is distinguishable 
 from the instant case.  Unlike this case, there was evidence in each of the 
 cases regarding the dangerous condition prior to the incident that was the subject 
 of the lawsuit.  See Campbell, 244 S.C. at 190-91, 135 S.E.2d 
 at 840 (affirming denial of highway departments post-trial motions in case 
 involving motorcycle accident on negligently maintained mountain road where 
 highway department had on occasion repaired the road and was aware that the 
 drainage system was insufficient to take care of excess water); Inabinett, 
 196 S.C. at 123-24, 12 S.E.2d at 850 (affirming denial of highway departments 
 post-trial motions in case for personal injuries sustained when a tree alongside 
 a public highway fell onto plaintiffs vehicle where plaintiff offered testimony 
 that highway department was on constructive notice of the dangerous condition 
 given the decay of the tree was visible and the highway department had examined 
 the surrounding road shortly before the accident but had not discovered the 
 condition of the tree); Ford, 328 S.C. at 487-89, 492 S.E.2d at 814-15 
 (reversing grant of summary judgment in favor of highway department in case 
 arising from death of motorcyclist who collided with a fallen tree on the road 
 where department worked in the area intermittently in the weeks immediately 
 preceding the accident and an area neighbor informed the department prior to 
 the accident that trees were falling onto the road and were dangerous).
Because there was no actual notice of a dangerous condition, and it is impossible 
 to charge the DOT with constructive notice of a dangerous condition when there 
 is no testimony of a dangerous condition, we find the trial court properly directed 
 a verdict in favor of the DOT.  Thus, even assuming the DOTs improper maintenance 
 of the vegetation proximately caused Saxons injuries, the DOT was immune from 
 liability under the Tort Claims Act given it did not have actual or constructive 
 notice of the defect or condition.
CONCLUSION
For the reasons stated above, 
 the decision of the circuit court is
AFFIRMED.
HEARN, CJ., STILWELL, J., and CURETON, AJ., concur.

 
 
 [1]   Saxon also filed suit against Thomas Cooler, the driver of the other 
 vehicle.  After discovery was completed, Saxon dismissed Cooler as a party. 
 

 
 [2]   We decide this case without oral argument pursuant 
 to Rule 215, SCACR.

 
 [3]   We note the DOT concedes in 
 its brief that Saxon presented evidence of all of the elements of negligence 
 except proximate cause.